UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TYRONE DUNBAR** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-292** |
| **SARGEANT WRIGHT AND STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS, AND DIXON CORRECTIONAL INSTITUTE** | **SECTION B (4)** |

## ORDER AND REASONS

Before the Court is Sergeant Derrick Wright, and the State of Louisiana, through the Department of Public Safety and Corrections' ("Defendants") Motion for Summary Judgment and responsive pleading. (Rec. Doc. Nos. 12 and 23). In response, Plaintiff Tyrone Dunbar filed his Opposition to Defendants' Motion for Partial Summary Judgment.[1] (Rec. Doc. No. 18). In turn, Plaintiff filed his FRCP 56 (A) Motion for Partial Summary Judgment. (Rec. Doc. No. 14). In response, Defendants filed their Opposition to Motion for Partial Summary Judgment. (Rec. Doc. No. 20).

Accordingly, and for the reasons pronounced below, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's FRCP 56 (A) Motion for

---

[1] Defendants filed a Motion for Summary Judgment, not Partial Summary Judgment. (Rec. Doc. No. 12).

1

Partial Summary Judgment (Rec. Doc. No. 14) is **DENIED**.

Cause of Action and Facts of the Case:

Plaintiff was an inmate at Dixon Correctional Institute ("DCI") at all times pertinent to the immediate case. (Rec. Doc. No. 18, at 1). Plaintiff submits that on January 2, 2011, he was in the vicinity of dorms E and B at DCI. Plaintiff further submits that on this day, Defendant Wright, a correctional officer at DCI, advised Plaintiff that due to his suspicious actions, Defendant Wright had to perform a strip search on Plaintiff. (Id.). Plaintiff then submits that Defendant Wright ordered Plaintiff into a security bathroom, away from the view of others, and ordered Plaintiff to perform fellatio on Defendant Wright. (Id.).

Pursuant to this alleged assault, Plaintiff retained a fluid sample from Defendant Wright in a green top vial. (Id. at 2).

This sample was submitted for testing to the DNA Diagnostic Center in Fairfield, Ohio, and its results indicate that the fluids in the green top vial were seminal fluids and saliva. (Id.; *see also* Rec. Doc. No. 18-3, at 1). Once these results were reported, Sergeant Wright and Plaintiff submitted to a DNA test to be conducted by the DNA Diagnostic Center. (Id.). The results of the comparison test yielded a match to both Plaintiff and Defendant

Wright. (Id.; Rec. Doc. No. 18-2, at 4).[2]

Plaintiff also filed a complaint to the DOC, pursuant to the Corrections Administrative Remedy Procedure [ARP]. (Rec. Doc. No. 12-3, at 3-5). Pursuant to DOC's investigation, on January 10, 2011, Lieutenant Colonel Keith Turner and Captain Denise Felker interviewed Plaintiff and Defendant Wright. (Id. at 10). In said interviews, according to Lt. Turner and Capt. Felker's February 1, 2011 letter to the Warden, Plaintiff reiterated his version of the alleged assault and Defendant Wright denied the same. (Id.). On January 20, 2011, a polygraph test was administered to Plaintiff and Defendant Wright by Colonel Russel Bordelon. (Id.). The report of this test revealed that "deception was indicated by offender Dunbar concerning the alleged incident." (Id.); (Rec. Doc. No. 12-3, at 14-15).

On February 16, 2011, when Plaintiff received the First Step

---

[2]

*The major DNA profile is consistent with Tyrone J. Dunbar (item 02.A.1) and the minor DNA profile is consistent with Derrick D. Wright (item 03.A.1).* The probability of selecting an unrelated individual at random from the population having a DNA profile matching the major profile obtained from item 01.A.1ns (section of swab of unknown liquid in green top vial-nonsperm fraction) is approximately 1 in 24,500,000 individuals. The probability of selecting an unrelated individual at random from the population having a DNA profile matching the minor DNA profile obtained from item 01.A.1ns (section of swab of unknown liquid in green top vial-nonsperm fraction) is approximately 1 in 39,500 individuals.

(Rec. Doc. No. 18-2, at 4)(emphasis added).

Response that indicated his step one complaint against Defendant Wright had been denied, he checked a box stating: "I am not satisfied with this response and wish to proceed to Step Two." (Rec. Doc. No. 12-3, at 17). Thusly, on February 18, 2011, Plaintiff filed another written complaint, captioned Administrative Remedy, arguing that "[d]ue to this investigation of poorly investigating reports by Lt. Colonel Turner and Warden James Stevens on above date, 1/10/2011, my request for administrative remedy was denied." (Rec. Doc. No. 12-3, at 12). On February 22, 2011, Plaintiff initiated this action in the 20th Judicial District for the Parish of East Feliciana. (Rec. Doc. No. 1, at 1). However, DCI's Administrative Remedy Procedure & Property Claims chart indicates that Plaintiff filed his step two complaint on March 14, 2011. (Rec. Doc. No. 12-3, at 2). The complaint was accepted on the same date, but, there is no disposition date or disposition code listed. (Id.). As such, there was no response to Plaintiff's step two complaint. (Id.).

## **LAW AND ANALYSIS**

a. Motion for Summary Judgment

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any

4

affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Id*. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.*, 7 F.3d 1203, 1207 (5th Cir. 1993).

b. Administrative Exhaustion is Mandatory

Title 42 U.S.C. § 1997e(a), as amended by the Prison Litigation Reform Act of 1996 ("PLRA"), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The United States Supreme Court has held

5

that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thusly, by its very terms, the PLRA applies to Plaintiff's instant § 1983 claim.

"The failure to exhaust is an affirmative defense and, under the PLRA, inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Rebaldo v. Jenkins*, 660 F.Supp.2d 755, 761 (E.D. La. 2009) (quoting *Jones v. Bock*, 549 U.S. 199, 216 (2007)) (internal quotation marks omitted). Thusly, Defendants bear the burden of proof concerning ARP exhaustion both at trial and in pretrial motions.

In Louisiana law, it is well settled that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice." LA. REV. STAT. § 15:1184(A)(2). This requirement applies to any prisoner complaint " with respect to the conditions of confinement or the effects of actions by government officials in the lives of persons confined in prison." LA. REV. STAT. § 15:1184(A)(1)(a). Furthermore, it is well noted that "Louisiana has a two-step Administrative Remedy Procedure ("ARP") for inmates, which they are required to use before filing suit in district

court." *Dillon v. Rogers*, 596 F.3d 260, 265 (5th Cir. 2010).

Here, Defendants have provided facts that there was an administrative remedy process available to Plaintiff. Furthermore, Plaintiff utilized said process and initially received a Denial of his first claim. (Rec. Doc. No. 12-3, at 2). In response, he indicated on his First Step Response Form (Rec. Doc. No. 12-3, at 17) that he "was not satisfied with this response and [wished] to proceed to Step Two." On this same form, which was dated February 16, 2011, he also wrote "I[,] offender Tyrone Dunbar[,] [i]s requesting for another investigation and let it maybe conducted, by [a]n licensed [i]nvestigator properly." (Id.). Thusly, he clearly indicated his intent to proceed with step two of the ARP. However, after he indicated said interest, on February 22, 2011, he then filed the instant suit in the 20th Judicial District Court for the Parish of East Feliciana. Therefore, he did not complete the second step of the ARP, nor did he receive a response from the second step of the process.

The Fifth Circuit has held that "[i]f the inmate is not satisfied with the *second step response*, he or she may then file suit in district court." *Dillon*, 596 F.3d at 266 (citations omitted and emphasis added); *see also* LA. ADMIN. CODE 22, pt. I § 325 (J)(2)-(2)(a).[3] Plaintiff failed to wait for a response, and both the

---

[3] Second Step (time limit 45 days). An offender who is dissatisfied with the first step response (Form

7

respective case law and code state that an inmate must wait for a *response* from his/her second step before the inmate may proceed to district court. Here, there was no such response, and no showing of justification in order to award such a response at the second stage of the administrative process.

Further, the Fifth Circuit has recognized that "[u]nder our strict approach, we have found that mere 'substantial compliance' with administrative remedy procedures does not satisfy exhaustion; instead, *we have required prisoners to exhaust available remedies properly*." *Dillon*, 596 F.3d at 268 (emphasis added). By only receiving a step one response, Plaintiff merely "'substantial[ly] compl[ied]'" with [the] administrative remedy procedures, and this [did] not satisfy exhaustion." Thusly, Plaintiff failed to "exhaust [the] available remed[y] properly." *Id*. The failure to wait for a

---

>B-05-005-ARP-2) may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision. A final decision will be made by the secretary or designee and the offender shall be notified within 45 days of receipt utilizing the second step response (Form B-05-005-ARP-3). A copy of the secretary's decision shall be sent to the warden.
>
>a. *If an offender is not satisfied with the second step response* (Form B-05-005-ARP-3), he may file suit in district court. The offender must furnish the administrative remedy procedure number on the court forms.

La. Admin. Code 22, pt. I § 325 (J)(2)-(2)(a) (emphasis added).

step two response, was "[Plaintiff's] failure to pursue his grievance remedy to *conclusion[,]* [and therefore] constitutes a failure to exhaust his administrative remedies." *Johnson v. Cheney*, 313 Fed. Appx. 732, at *1 (5th Cir. 2009).

Furthermore, the Court recognizes that despite his reliance upon *Pope v. State*, 792 So.2d 713 (La. 2001), Plaintiff is now asserting a § 1983 claim in federal court. As such, because there is a working administrative grievance system in place, he must fully exhaust that process.[4] Accordingly, at this time, summary judgment in favor of Defendants is appropriate. The Court's instant ruling does not preclude Plaintiff from refiling a motion for summary judgment after he has completely exhausted the administrative remedies available to him.

Accordingly, and for the reasons pronounced above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment (Rec. Doc. No. 12) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's FRCP 56 (A) Motion for

---

[4]
> But, while *Pope* or its progeny govern the effect of the prison administrative system on a claim later filed in state court, it has no impact on the necessity of exhaustion prior to the filing of a § 1983 claim in federal court. As long as a prison administrative grievance system remains in force (as the state assures us is the case), [the inmate] must exhaust. Exhaustion remains mandatory, "irrespective of the forms of relief sought and offered through administrative remedies." *Ferrington v. La Dept. of Corrections*, 315 F.3d 529, 532 (5th Cir. 2002).

Partial Summary Judgment (Rec. Doc. No. 14) is **DENIED**.[5]

New Orleans, Louisiana, this 21st day of March, 2012.

_____
UNITED STATES DISTRICT JUDGE

---

[5]　It is worth noting that Plaintiff's Motion for Partial Summary Judgment primarily contends that partial summary judgment is appropriate on the issue of an alleged sexual assault because of Plaintiff's contentions and the fluid he retained from this alleged assault, which matches Defendant Wright. However, the Court notes that the mere retention of a bodily fluid from Defendant Wright does not, by itself, evince a sexual assault occurred. This bodily fluid could have been retained from a consensual sexual encounter. Accordingly, partial summary judgment on this issue is inappropriate.